William A. APPLING; Joseph J. Kelly; Robert Buehler; John Lloyd; Daryl Mitchell; Richard Pyorre; John Weir; Gerard M. Verdi; William R. Sparks; Leonard D. Doctor; Jerry Lee Flanders; Verne Walton Ins; Larry K. Wilson; Michael C. Hartman; Daniel Brumfield; Martin H. Lefton; Douglas H. Perry; Mathew N. Pickett, Jr.; Jo Ann Searcy; William R. Cornelison; Marilyn J. Cusimano; Dennis B. Farrell; Andrew W. Gaines; David B. Gordon; Paul Julian Ins; Rosanne Smith; W.F. "Bill" Burbank Insurance Agency, Inc.; Jean A. Cormier; Lee Cramer Insurance Agency, Inc.; Franklin Dutto; Joan F. Ehler; Raymond C. Gilmore; Allen K. Golden; Richard O. Johnson; Gabriel O. Juarez, Jr.; Bob Kennedy Insurance Agency, Inc.; Lewis Insurance Agency, Inc.; Lykke Insurance Agency, Inc.; Robert G. Marshall; Terry L. McManus; Alan L. Perkins; Dale W. Pitney, Jr.; Eleanor E. Rowland; Jorge Sotelo Insurance Agency, Inc.; Anthony E. Vito; Terry D. Walker; Judy E. Weldin–Leathers; Thomas A. Wilson; Michelle B. Pierce, aka Michelle B. Yates; Clifford K. Young; William Batchelder; Hooper Insurance Agency; Harold R. Little; Fred Love; Sam I. Mayeda; Jim Moore Insurance Agency, Inc.; Michael L. Morgan; The Edward Pierce Insurance Agency, Inc.; Dick Juge Insurance Agency, Inc.; Paul Quilici; Bill Bernard Insurance Agency, Inc.; Jacob Castroll; Reguera Insurance Agency, Inc.; Chambers Insurance Agency, Inc.; Lee P. Saghirian; Tana P. Glockner, aka Tana P. Glockner–Shultz; Kenneth E. Carroll; Richard S. Frank Insurance Agency, Inc.; Bob Andras Insurance Agency, Inc.; Patricia Adkins Insurance Agency, Inc.; Joann M. Pergrem, aka Joann McWilliams, Plaintiffs–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; State Farm Fire and Casualty Company; State Farm Life Insurance Company; State Farm General Insurance Company, Defendants–Appellees.

William A. Appling; Leonard D. Doctor; Jerry Lee Flanders; Larry K. Wilson; Michael C. Hartman; Daniel Brumfield; Martin H. Lefton; Douglas H. Perry; Mathew N. Pickett, Jr.; Jo Ann Searcy; William R. Cornelison; Marilyn J. Cusimano; Dennis B. Farrell; Andrew W. Gaines; David B. Gordon; Rosanne Smith; Paul Julian Insurance Agency, Inc.; Verne Walton Insurance Agency, Inc.; Raymond C. Gilmore; Bob Kennedy Insurance Agency, Inc.; Lewis Insurance Agency, Inc.; Dale W. Pitney, Jr.; Anthony E. Vito; Terry D. Walker; Paul Quilici; Jacob Castroll, Plaintiffs–Appellants,

v.

Orrick, Herrington & Sutcliffe; State Farm Mutual Automobile Insurance Company; State Farm Fire and Casualty Company; State Farm Life Insurance Company; State Farm General Insurance Company, Defendants–Appellees.

Nos. 00–16521, 02–16452.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 31, 2003.

Filed Aug. 13, 2003.

William P. Tedards, Jr., Washington, D.C., for the plaintiffs-appellants.

George A. Yuhas, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA, for the defendants-appellees.

Steven A. Brick, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA, for the defendants-appellees.

Before B. FLETCHER, KOZINSKI, and TROTT, Circuit Judges.

Opinion by Judge TROTT; Dissent by Judge BETTY B. FLETCHER

## OPINION

TROTT, Circuit Judge.

Plaintiffs–Appellants ("Agents") are independent-contractor insurance agents who sold insurance products for the State Farm group of insurance companies ("State Farm").[1] Each Agent has or had an independent-contractor agreement with State Farm ("contract").[2]

This consolidated appeal arises from an action the Agents brought in district court alleging that State Farm breached the contract ("breach of contract action"). The district court granted summary judgment in favor of State Farm on July 3, 2000. The Agents appeal this decision in Case No. 00–16521, arguing that the district court abused its discretion by not applying collateral estoppel against State Farm based on our unpublished decision in *Sandberg v. State Farm Mut. Auto. Ins. Co.*, 182 F.3d 927 (9th Cir.1999) (mem. disposition), *cert. denied,* 528 U.S. 1118, 120 S.Ct. 938, 145 L.Ed.2d 816 (2000). The Agents also argue that a genuine issue of material fact exists as to: (1) whether the contract's termination provision required good cause before State Farm could terminate its agents; (2) whether State Farm breached the implied covenant of good faith and fair dealing by terminating some of the Agents; (3) whether the contract's provision granting State Farm the right to prescribe rules governing the binding, acceptance, renewal, rejection, or cancellation of risks allowed State Farm to implement a program that limited its risk exposure in certain geographic locations; and (4) whether State Farm breached the implied covenant of good faith and fair dealing by not giving the Agents permission to place rejected business with other insurance carriers. We have jurisdiction under 28 U.S.C. § 1291, and we affirm because we hold that there are no genuine issues of material fact on any of these claims.

1. The State Farm group of insurance companies are (1) State Farm Mutual Automobile Insurance Company, (2) State Farm Fire and Casualty Company, (3) State Farm Life Insurance Company, and (4) State Farm General Insurance Company.

2. State Farm has modified the contract from time to time; however, each of the Agents had the AA660 (introduced in 1966), AA3 (introduced in 1977), or AA4 (introduced in 1982) version of the contract. Because the changes in the versions of the contract do not affect our analysis, we refer to all three versions as the "contract."

On August 20, 2001, the Agents brought an independent action ("independent action") to set aside part of the summary judgment in their failed breach of contract action. In the independent action, Case No. 02–16452, the Agents alleged as a ground for relief that State Farm's counsel, Orrick, Herrington & Sutcliffe LLP ("Orrick"), committed fraud on the district court by (1) responding to a subpoena for information from a retired State Farm executive without the executive's permission, and (2) assuring the Agents' counsel that the retired executive did not have any documents or knowledge concerning the subject matter of the litigation. The district court dismissed the independent action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm because we hold that Orrick's actions do not amount to fraud on the district court.

## BACKGROUND

### A.

The Agents' breach of contract action arises from their contract with State Farm. The contract contained two integration clauses clearly superseding all prior agreements, and stating that changes to the terms of the contract could only be made by signed writings. The contract contained also the following provisions upon which the Agents based their claims.

### 1. "Termination Provision"

The Termination Provision states: "You or State Farm have the right to terminate this Agreement by written notice...." State Farm adopted this version of the provision in 1966. The prior version read: "This agreement may be terminated ...

with or without cause, by either party or parties giving written notice to the other...." In 1966, State Farm also added a "Termination Review Provision" that did not appear in its prior version of the contract, providing for review of decisions made by State Farm to terminate the contract: "In the event we terminate this Agreement, you are entitled upon request to a review in accordance with the termination review procedures approved by the Boards of Directors of the Companies, as amended from time to time."

The Agents who brought the breach of contract action included some agents terminated by State Farm in March/ April 1997.

### 2. "Risk Provision"

In response to catastrophic losses caused by Hurricane Andrew (1992) and the Northridge Earthquake in Southern California (1994), State Farm implemented programs to reduce its risk exposure pursuant to the Risk Provision. The Risk Provision stated:

> We retain the right to prescribe all policy forms and provisions; premiums, fees, and charges for insurance; and rules governing the binding, acceptance, renewal, rejection, or cancelation [sic] of risks, and adjustment and payment of losses.

In September 1994, State Farm announced an exposure management program for the State Farm Fire and Casualty Company.[3] The program limited risk exposure growth that varied by geographic areas, called "exposure segments." These segments were determined by degrees of exposure to catastrophic loss. Those segments with the highest exposure were subject to the most stringent growth limitations—a re-

---

**3.** The Agents also challenged several other programs and procedures in the district court, which they do not mention in their opening brief. Any claims based on those programs and procedures are therefore abandoned on appeal. *Collins v. City of San Diego,* 841 F.2d 337, 339 (9th Cir.1988).

quirement that the agents not write new business until policyholders' non-renewal or relocation removed 4% of the existing business. Most segments, however, were not subject to growth limitations.

### 3. "Principal Occupation Provision"

State Farm refused to grant the Agents permission to place business rejected as a result of State Farm's program—including the exposure management program—with other insurance carriers. State Farm relied on the contract's Principal Occupation Provision, which stated:

> The fulfillment of this Agreement will be your principal occupation, and you will not directly or indirectly write or service insurance for any other company, other than a State Farm affiliate or through an assigned risk plan, or for any agent or broker, except in accordance with the terms of any written consent we may give you.[4]

### B.

The basis for the Agents' independent action involved Orrick's response to an October 1998 subpoena issue in the breach of contract action and served on Henry Keller ("Keller"), a former State Farm executive who retired in 1976. The subpoena sought the following information:

> 1. Any and all documents regarding [State Farm] ... from, and including, January 1, 1988 to the present.
> 2. Any and all correspondence with any representative, employee, officer, director, agent, consultant or and all other persons working for or with [State Farm] ... from, and including, January 1, 1988 to present.

Keller contacted State Farm about the subpoena, and State Farm assured him they would handle the matter on his be-half. On November 9, 1998, Orrick responded to the subpoena on Keller's behalf by objecting to it. The Agents also allege that during a break at a deposition on November 19, 1998, Orrick assured their counsel that Keller did not have any documents or knowledge concerning the subject matter of the litigation.

In January 2001, six months after the district court entered its summary judgment in the breach of contract action, the Agents discovered that Keller had not authorized State Farm to respond on his behalf, and was never shown a copy of the objections or consulted with respect to their contents. On August 20, 2001, the Agents brought the independent action to set aside the portion of the summary judgment in the breach of contract action relating to the Termination Provision. The Agents asserted that Orrick's actions regarding Keller were fraud on the court and that, without the fraud, Keller would have produced: (1) a 1997 letter Keller wrote to State Farm's President and CEO criticizing State Farm's handling of a new form contract; (2) a 1988 videotape interview of Keller, in which Keller states that the 1966 revision of the Termination Provision was in response to agent concerns about arbitrary terminations; and (3) a statement Keller made discussing the 1966 revision. The district court dismissed the independent action, holding that Orrick's actions regarding Keller were not fraud on the court.

## DISCUSSION

### I. Case No. 00–16521—The Agents' Appeal From the District Court's Summary Judgment in the Breach of Contract Action

We review a grant of summary judgment de novo. *Oliver v. Keller*, 289 F.3d

---

**4.** State Farm revised this provision in 1977, but the difference between the two versions is not relevant to our analysis. We refer to both provisions as the "Principal Occupation Provision."

623, 626 (9th Cir.2002). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## A.

### The District Court Correctly Exercised Its Discretion By Refusing to Apply Collateral Estoppel

■ Generally, we review issues regarding collateral estoppel de novo. *United States v. 22 Santa Barbara Drive*, 264 F.3d 860, 868 (9th Cir.2001). Offensive non-mutual collateral estoppel is a version of the doctrine that arises when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). District courts have discretion whether to apply offensive non-mutual collateral estoppel, and we may only reverse if they abuse that discretion. *Id.* at 331, 99 S.Ct. 645; *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 330 (9th Cir.1988). The Agents argued before the district court and on appeal that *Sandberg*, 182 F.3d 927, where we held that the Termination Provision required good cause before State Farm could terminate its agents, should apply to collaterally estop State Farm from relitigating here whether the Termination Provision required good cause.[5]

In *Sandberg*, State Farm terminated its independent-contractor agreement with Sandberg, one of its agents. 182 F.3d 927. Sandberg then brought a breach of contract claim against State Farm arguing that the same Termination Provision at issue in this case allowed State Farm to terminate for good cause only. *Id.* The district court disagreed and held that the Termination Provision allowed State Farm to terminate at-will. *Id.* On appeal, however, we held that the Termination Provision was reasonably susceptible to a termination-for-cause interpretation. *Id.* We noted that two extrinsic facts supported Sandberg's for-cause interpretation: (1) State Farm omitted the "with or without" language in its 1966 revision of the Termination Provision; and (2) in a 1977 article, State Farm's Vice President for Agencies discussed the company's termination review procedure and explained that termination would only occur when "the file clearly supports a serious violation of a contract agreement. . . ." *Id.* Nevertheless, the district court refused to apply collateral estoppel against State Farm based on our decision in *Sandberg.* The district court concluded that to do so would be unfair to State Farm.

■ Offensive non-mutual collateral estoppel applies where (1) the issue sought to be litigated is sufficiently similar to the issue presented in an earlier proceeding and sufficiently material in both actions to justify invoking the doctrine, (2) the issue was actually litigated in the first case, and (3) the issue was necessarily decided in the first case. *United States v. Weems*, 49 F.3d 528, 532 (9th Cir.1995). State Farm does not dispute that the first two requirements are satisfied here, but argues that *Sandberg* did not necessarily decide that the Termination Provision required good cause. We disagree.

*Sandberg* necessarily decided that the Termination Provision required good cause. The panel determined this predi-

---

**5.** *Sandberg* is an unpublished disposition of this court that may not be cited to or by the courts of this circuit as precedent, but may be cited when relevant under the doctrine of collateral estoppel. 9th Cir. R. 36–3.

cate issue before holding that State Farm had good cause for termination. Otherwise the panel would have affirmed the district court's judgment that the agent's termination was appropriate under an at-will provision. *See, e.g., id.* at 530–32 (holding that the government was collaterally estopped from trying to prove the defendant knew his property was used to grow marijuana because, in a previous case, the court found that the defendant was an innocent owner with no knowledge of the marijuana growing operation and refused to apply forfeiture on one of two grounds asserted by the government). Moreover, the panel clearly thought that the decision was necessary to its holding because it examined State Farm's cause to terminate only after determining the Termination Provision required good cause. Thus, the district court erred by finding the termination-for-cause decision in *Sandberg* was not necessary to the holding. Contrary to the district court's conclusion, the prerequisite for applying collateral estoppel was met. *See Weems,* 49 F.3d at 532.

■■■ But we affirm the district court's decision because, notwithstanding its erroneous conclusion on the "necessarily decided" question, it proceeded to balance the various fairness factors and held that the "stark landscape of inconsistent prior interpretations of the termination clause weighs heavily in favor of granting Sandberg no preclusive effect." The district court did not abuse its discretion by giving nearly conclusive weight to this factor. *See Parklane Hosiery,* 439 U.S. at 330–31, 99 S.Ct. 645 (holding that district courts have discretion to refuse to apply offensive non-mutual collateral estoppel against a defendant if such an application of the doctrine would be unfair). Allowing offensive non-mutual collateral estoppel may be unfair to a defendant "if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.* at 330, 99 S.Ct. 645; *see also Robi,* 838 F.2d at 330 (holding that the district court abused its discretion by applying collateral estoppel to preclude appellant from relitigating an issue where the judgment that generated issue preclusion was inconsistent with a judgment appellant obtained against the appellee, on whose behalf issue preclusion was asserted). The district court correctly noted that *Sandberg* is contrary to several other well-reasoned holdings in favor of State Farm that the same Termination Provision at issue here allowed State Farm to terminate the contract at-will. *See Olander v. State Farm Mut. Auto. Ins. Co.,* 317 F.3d 807, 812 (8th Cir.2003) (en banc); *Peters v. State Farm,* No. 85–2177–S (D.Kan.1986) (holding that the same Termination Provision at issue here allowed State Farm to terminate at-will the independent-contractor agreement); *Mooney v. State Farm Ins. Cos.,* 344 F.Supp. 697, 699–700 (D.N.H.1972) (same); *Ex parte Gardner,* 822 So.2d 1211, 1217–19 (Ala.2001) (same); *Scola v. State Farm,* No. 1–46985 (Cal.Ct.App.1981) (same); *Drum v. State Farm,* No. 991165 (Cal.Super.Ct.1998), *aff'd* No. A087634 (2000) (same); *Lotten v. State Farm,* No. 97–01951 (Cal.Super.Ct.1998) (same); *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 749 P.2d 1105, 1110–11 (1988) (same); *see also Vitkauskas v. State Farm Mut. Auto. Ins. Co.,* 157 Ill.App.3d 317, 109 Ill.Dec. 373, 509 N.E.2d 1385, 1387–88 (1987) (holding that the termination provision in a Building Plan Agreement between State Farm and the plaintiff-agent, which stated that "[e]ither party may terminate this Agreement by written notice," allowed termination at-will).

In *Olander,* for example, Olander, a State Farm agent, was charged with murder after a violent altercation with a neighbor. 317 F.3d at 808. When Olander refused to take a leave of absence until the

criminal charges were resolved, State Farm terminated his independent-contractor agreement. *Id.* at 808–09. Olander then brought a wrongful termination action against State Farm. *Id.* at 809. The Eight Circuit sitting en banc reversed a divided three-judge panel of that court, and held that the same Termination Provision at issue in this case allowed State Farm to terminate Olander at-will. *Id.* at 811–12. Because of the inconsistent judgments and therefore potential unfairness to State Farm, we hold that the district court correctly exercised its discretion here by refusing to apply offensive non-mutual collateral estoppel and deciding the issue on the merits.

## B.

### The Termination Provision Does Not Require Good Cause

The Agents dispute the district court's conclusion that the Termination Provision allowed termination at-will, and argue that parol evidence can be used to interpret the provision to show that it required good cause. In *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* the California Supreme Court established rules governing use of parol evidence in determining the meaning of words in a contract where the contract otherwise is clear and unambiguous, and integrated. 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 644–46 (1968) (in bank). A reviewing court must consider extrinsic evidence in determining whether the contractual language is "fairly susceptible" to the meaning urged by the movant. *Id.* at 646. If the court so decides, then the extrinsic evidence is admissible as relevant evidence to prove the meaning of the language. *Id.*

■ *Pacific Gas,* however, makes clear that "extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract," *id.* at 645, but only to define the terms in the contract:

[R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. Such evidence includes testimony as to the circumstances surrounding the making of the agreement ... including the object, nature and subject matter of the writing ... so that the court can place itself in the same situation in which the parties found themselves at the time of contracting.

*Id.* at 645 (internal quotation marks, citations, and footnote omitted); *see also Masterson v. Sine,* 68 Cal.2d 222, 65 Cal.Rptr. 545, 436 P.2d 561, 563 (1968) (in bank) (stating the general rule that a party cannot use parol evidence to add to or vary the terms of an integrated contract). This rule "does no more than allow extrinsic evidence of the parties' understanding and intended meaning of the *Words used in their written agreement.*" *Brawthen v. H & R Block, Inc.,* 28 Cal.App.3d 131, 104 Cal.Rptr. 486, 490 (1972) (emphasis added). If the court finds that the contract is not susceptible to alternative meanings, then it may proceed to determine the issue based on the plain meaning of the contract language.

The district court held that the plain meaning of the Termination Provision allowed termination at-will and that the evidence did not create a genuine issue of material fact on the issue of contract interpretation. The Agents argue that the Termination Provision is susceptible to a for-cause interpretation because: (1) State Farm deleted the "with or without cause" language in 1966 in response to agent concerns; (2) State Farm added the Termination Review Provision in 1966; (3) and State Farm commented in employee literature that State Farm would not terminate agents except in cases of serious infractions.

Here, the Agents are seeking to add a "good cause" term to the Termination Provision, not to interpret the words of that provision. The Termination Provision is clear and only requires written notice for termination, therefore State Farm's deletion of the "with or without cause" language does not create ambiguity. Moreover, State Farm's insertion of the Termination Review Provision does not compel a conclusion that the contract requires good cause for termination. *See, e.g., Olander,* 317 F.3d at 811 (holding that the Termination Review Provision did not make the Termination Provision ambiguous). On the contrary, the Termination Review Provision suggests State Farm's desire to prevent arbitrary terminations without limiting its legal entitlement to terminate at-will by written notice. Finally, comments in employee literature and guidebooks about the agents' concern in 1966 do not indicate that the words "right to terminate this Agreement by written notice" required good cause.

As an example of what it meant by use of extrinsic evidence to interpret the words in a contract, *Pacific Gas* pointed out that evidence of trade usage or custom has been admitted to show that the term "United Kingdom" in a motion picture distribution contract included Ireland. 69 Cal.Rptr. 561, 442 P.2d at 645 n. 6. Here, on the other hand, the Agents have not introduced any extrinsic evidence that interprets specific words in the Termination Provision; instead, the Agents have sought to introduce evidence grafting on a good cause requirement, a practice that *Pacific Gas* prohibits.

State Farm and the Agents point to competing California Court of Appeals decisions from different districts to support their respective arguments. State Farm relies on *Bionghi v. Metro. Water Dist.,* 70 Cal.App.4th 1358, 83 Cal.Rptr.2d 388 (1999). In *Bionghi,* the contract permitted termination by 30 days written notice. *Id.* at 391–92. Holding that the contract allowed termination at-will, the court noted that *Pacific Gas* merely allowed extrinsic evidence to interpret the words of the contract: "*Pacific Gas & Electric* is thus not a cloak under which a party can smuggle extrinsic evidence to add a term to an integrated contract, in defeat of the parol evidence rule." *Id.* at 393.

For their argument, the Agents rely on *Wallis v. Farmers Group, Inc.,* 220 Cal. App.3d 718, 269 Cal.Rptr. 299 (1990). In *Wallis,* the agent's contract permitted termination by either party on three months notice. *Id.* at 305. The court found that because the clause was silent on the subject of good cause, it was fairly susceptible to a meaning that there was an express oral agreement or an implied-in-fact agreement that the contract could be terminated only for cause. *Id.* at 306. To show an implied-in-fact agreement that Farmers could only discharge her for cause, the agent introduced affidavits of Farmer's officers stating they thought the termination provision required good cause. *Id.* at 306–07. *Bionghi* sharply criticized and refused to apply *Wallis.*

■ We need not choose between *Bionghi* and *Wallis.* Federal courts sitting in diversity "are bound by the pronouncements of the state's highest court on applicable state law." *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 939 (9th Cir.2001). *Pacific Gas* provides the necessary guidance to resolve this issue on appeal, and clearly prohibits the Agents' attempt to graft a good cause requirement onto the Termination Provision's plain language. Thus, the district court correctly held that there was no genuine issue of material fact

as to the meaning of the Termination Provision.

## C.

### State Farm Did Not Breach the Implied Covenant of Good Faith and Fair Dealing by Terminating Some of the Agents

■ The Agents argue that even if State Farm had a right at-will to terminate the Agents, it employed that power in bad faith in violation of the implied covenant of good faith and fair dealing. California law implies the covenant of good faith and fair dealing in every contract to ensure one contracting party does not unfairly frustrate the other party's right to receive the benefits of their agreement. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 100 Cal. Rptr.2d 352, 8 P.3d 1089, 1110 (2000). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* "Thus if the employer's termination decisions, however arbitrary, do not breach such a substantive contract provision, they are not precluded by the covenant." *Id.; see also Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 400 n. 39 (1988) (in bank) ("[W]ith regard to an at-will employment relationship, breach of the implied covenant cannot logically be based on a claim that a discharge was made without good cause").

The Agents cannot graft a good cause requirement onto the Termination Provision using the implied covenant of good faith and fair dealing where State Farm has terminated an at-will relationship according to an express contract provision. State Farm did not violate any substantive contract provision by terminating the Agents. Thus, the district court correctly granted State Farm summary judgment on this claim.

## D.

### The Risk Provision Allowed State Farm to Implement the Exposure Management Program

■ The district court granted State Farm's summary judgment on the Agents' claim that the exposure management program was not authorized under the Risk Provision, which states "We [State Farm] retain the right to prescribe all policy forms and provisions; premiums, fees, and charges for insurance; and rules *governing the binding, acceptance, renewal, rejection, or cancelation [sic] of risks,* and adjustment and payment of losses." (Emphasis added). This provision is patently clear: State Farm has the right to prescribe rules governing risks. Because the exposure management program is a program governing risks, it is permissible under the Risk Provision. The fact that State Farm subsequently added language to clarify the Risk Provision does not suggest that the explicit language at issue did not authorize the exposure management program. We hold that the district court properly granted summary judgment on this issue.

## E.

### State Farm Did Not Breach the Implied Covenant of Good Faith and Fair Dealing by Refusing the Agents Permission to Place Rejected Business with Other Carriers

■ As mentioned above, California law implies the covenant of good faith and fair dealing in every contract to ensure one contracting party does not unfairly frustrate the other party's right to receive the benefits of their agreement. *Guz*, 100 Cal. Rptr.2d 352, 8 P.3d at 1110. "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting

the rights of another. Such power must be exercised in good faith." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 6 Cal.Rptr.2d 467, 826 P.2d 710, 726–30 (1992) (in bank) (holding that a clause in a commercial lease allowing the lessor to terminate the lease and recapture the leasehold upon notice by the lessee of intent to sublet or assign had to be exercised in good faith).

The covenant applies to State Farm's discretionary right to grant the Agents permission to place rejected business with other insurance carriers, which is contained in the Principal Occupation Provision. The Agents, however, have not asserted any actionable allegations showing that State Farm refused permission in bad faith.

**II  Case No. 02–16452—The Agents' Appeal From the District Court's Dismissal of Their Independent Action for Failure to State a Claim**

■ We review de novo a dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir.2002). However, an independent action to set aside a prior judgment is based on equity. *In re Levander*, 180 F.3d 1114, 1118 (9th Cir.1999). We review a district court's decision to deny equitable relief for an abuse of discretion. *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir.1997).

Federal Rule of Civil Procedure 60(b) preserves the district court's right to hear an independent action to set aside a judgment for fraud on the court. An independent action to set aside a judgment for fraud on the court is "reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." *United States v. Beggerly*, 524 U.S. 38, 46, 118

S.Ct. 1862, 141 L.Ed.2d 32 (1998) (internal quotation marks omitted). "[A]n independent action should be available only to prevent a grave miscarriage of justice." *Id.* at 47, 118 S.Ct. 1862 (holding that allegations that the prevailing parting failed during discovery in the underlying case to "thoroughly search its records and make full disclosure to the Court" were not fraud on the court).

■ As we explained in *In re Levander*, the basis for an independent action to set aside a judgment for fraud on the court lies in misconduct that "harm[s] the integrity of the judicial process." 180 F.3d at 1119 (internal quotation marks omitted). We read the term "fraud on the court" narrowly, and apply the following definition:

> "Fraud upon the court" . . . embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

*Id.* (internal quotation marks). Non-disclosure, or perjury by a party or witness, does not, by itself, amount to fraud on the court. *Id.* at 1119–20.

■ Fraud on the court requires a "grave miscarriage of justice," *Beggerly*, 524 U.S. at 47, 118 S.Ct. 1862, and a fraud that is aimed at the court. Here, Orrick's actions, even if they did occur as alleged, were aimed only at the Agents and did not disrupt the judicial process because the Agents through due diligence could have discovered the non-disclosure. Even if the nondisclosure worked an injustice, it did not work a "grave miscarriage of justice." Accordingly, we hold that the district court did not abuse its discretion by dismissing the independent action.

## CONCLUSION

For the foregoing reasons, we affirm the district court's summary judgment in the breach of contract action, Case No. 00 16521, and its dismissal of the independent action for failure to state a claim, Case No. 02–16452.

AFFIRMED.

BETTY B. FLETCHER, Circuit Judge, dissenting.

In the principal suit, I respectfully dissent. I would hold that the district court erred (1) in not applying collateral estoppel against State Farm and (2) in granting summary judgment in favor of State Farm. In the independent action, I would reinstate the action because the majority construes the circumstances in which a party commits fraud on the court too narrowly. If proved, the agents' allegations against Orrick and State Farm amount to fraud on the court sufficient to support an independent action.

### I. Breach of Contract Action

#### A. Collateral Estoppel

The majority holds that collateral estoppel does not bar relitigation in this case of the identical issue that was decided in *Sandberg v. State Farm Mut. Auto. Ins. Co.*, 182 F.3d 927 (9th Cir.1999) (table) (memorandum disposition). *Sandberg* held that, under California law, the contract provisions that are at issue here permit termination only for good cause. The majority concedes that the district court erred in holding that the preconditions for estoppel were not met in this case, *see* majority opinion, *supra*, but the majority nonetheless defers to the district court's ultimate decision not to estop State Farm from relitigating the issue. The majority errs.

To decide as it does, the majority must rely on the exception that "[a]llowing offensive collateral estoppel *may* ... be un-

fair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hosiery Co., v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (emphasis added). We do not apply a mechanical approach to the question of when prior inconsistent judgments preclude the application of collateral estoppel. Instead, we have held that *Parklane Hosiery* is a guide to determining when the application of collateral estoppel may be unfair to a defendant. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 330 (9th Cir. 1988) ("We prefer to read *Parklane* as providing guidance to the district courts for the appropriate exercise of discretion as to when to apply offensive issue preclusion in the presence of inconsistent judgments.").

Although *Sandberg* decided that State Farm had good cause to terminate the agent in that case, it held that under California law the same termination clause that is at issue here permitted termination only for good cause. The majority's conclusion that *Sandberg* is "inconsistent" with other authority so as to preclude applying collateral estoppel against State Farm is simply wrong. To be inconsistent in this sense, a decision must conflict with relevant legal authority on the same issue.

This case involves two groups of plaintiffs: (1) those from Arizona, California, Colorado, Iowa, Maryland, Nevada, Utah, and Washington—states that the district court held follow a rule that permits extrinsic evidence to be used to illuminate the meaning of *unambiguous* contract terms; and (2) those plaintiffs from Florida, Idaho, Kansas, Louisiana, Nebraska, Ohio, and Texas—states that the district court held permit the introduction of extrinsic evidence if a contract term is *ambiguous*. Neither party has challenged

the district court's conclusions in this regard. Accordingly, the only authority that would be relevant in determining that *Sandberg* was "inconsistent" would need to be authority interpreting the rule of law that we applied in *Sandberg*—that is, authority applying California law, or the law of a state that follows the same rule.

The pre-*Sandberg* authorities that State Farm proffers applied New Hampshire law, Illinois law, New Mexico law, and Kansas law—none of which is at issue here (except Kansas). Although State Farm cites three cases from California courts, two are from trial courts, and none of them is California Supreme Court authority. It is wrong to hold, on such a basis, that *Sandberg* is "inconsistent" with the law of California and of the other states that follow the same rule. Nor do any of the authorities that post-date our decision in *Sandberg* indicate that *Sandberg* is inconsistent.

Moreover, the majority is wrong to defer to the district court's decision in disregarding *Sandberg*. The district court has no such discretion, and we owe the district court's decision on this point no deference. The district court held that our decision in *Sandberg* was sufficiently inconsistent with prior decisions *in other jurisdictions* (not our court) that it would be unfair to estop State Farm from relitigating the scope of the termination clauses at issue. In such circumstances, the lower court's refusal to follow a decision of this circuit is reversible error.

The question of the consistency of *Sandberg* with prior decisions—and, hence, in some sense *Sandberg*'s fairness—was a matter for the panel that decided that case. It is improper to assume that the *Sandberg* panel was unaware of, or disregarded, the state of the law when it issued its disposition. Moreover, State Farm had ample opportunity to challenge the consistency (and fairness) of our decision with prior authority when it petitioned for rehearing by the original panel. State Farm again had the chance to raise the issue in its petition for certiorari that was denied by the Supreme Court. *See Sandberg v. State Farm Mutual Auto. Ins. Co.*, 528 U.S. 1118, 120 S.Ct. 938, 145 L.Ed.2d 816 (2000) (denying petition for certiorari). I submit that the district court here had no discretion to refuse to follow our *Sandberg* decision because, in the lower court's judgment, our decision did not agree with prior judgments from different courts.[1]

Nothing in *Parklane Hosiery* suggests that the Supreme Court intended to upset the usual channels of appellate review or to grant discretion to district courts to refuse to accord preclusive effect to prior judgments of their circuit courts. Nor does *Parklane Hosiery* suggest that we should defer to an inferior court within our jurisdiction as to the correct legal application of our own decisions. *Parklane Hosiery* involved the question of whether to grant preclusive effect to a decision by the Second Circuit in a case that was before a district court within the same circuit. *See id.* at 324–25, 99 S.Ct. 645. But the Supreme Court did not reach the actual question presented here of whether a district court may disregard a prior decision by the court of appeals that sits above it on the ground that the circuit's decision conflicts with foreign authority. Although the Court noted that a general exception might be made for decisions that are inconsistent with prior decisions, it held that

---

1. The district court considered *only* authority prior to *Sandberg* in concluding: "The Court ... takes note of the stark landscape of inconsistent prior interpretations of the termination clause, and finds that this factor weighs heavily in favor of granting *Sandberg* no preclusive effect." The district court's decision amounts to nothing more than an expression of disagreement with the correctness of the *Sandberg* decision.

"none of the circumstances that might justify reluctance to allow the offensive use of collateral estoppel is present." *Id.* at 331, 99 S.Ct. 645.

The district court has no special expertise nor license to assess, as a matter of law, whether our decisions are right, wrong, consistent, or inconsistent. That is, quite simply, our task (and that of the Supreme Court). Our decisions, whether memorandum dispositions or opinions, state the law of the circuit and must be followed by a district court in cases where they properly govern the issues presented. *See* Ninth Circuit Rule 36–3. The district court has no authority to disregard our decision.

In short, the district court's decision that State Farm is not collaterally estopped from relitigating whether the contracts here are terminable for cause was reversible error. The district court may not disregard our decision, and the conclusion that *Sandberg* is inconsistent with the weight of authority from other jurisdictions on the questions presented in this case is inaccurate.

### B. Summary Judgment

I also disagree with the majority that summary judgment was proper. I would reverse and remand for trial. In affirming the grant of summary judgment, the majority ignores the settled standards for summary judgment and substitutes its own interpretation of the evidence for one that views the evidence in the light most favorable to the nonmoving party. At summary judgment, the court is prohibited from taking such a view of the evidence. *See Mat-*

*sushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Neither party disputes that extrinsic evidence may be used to illuminate and interpret the meaning of the contract terms that are at issue here—at least as to the plaintiffs who have stated claims for breach of contract under the law of states, such as California, that permit such evidence to be used to interpret unambiguous contract terms. *See, e.g., Pacific Gas and Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 644–47 (1968) (en banc). The plaintiffs allege that the deletion of the "at will" provision from a previous version of the agency agreement, the addition of a termination review procedure, and State Farm documents that state that State Farm would not terminate agents except for serious infractions require a holding that the contract permits termination only for cause. Read together, this evidence, considered in the light most favorable to the plaintiffs, clearly supports the reasonable inference that the agency contracts were terminable only for cause.[2] At summary judgment the plaintiffs need show no more in order to proceed to trial.

The majority is wrong to hold that what the plaintiffs ask us to do is to write in or "graft" onto the contract a "for cause" provision. All that is required for the plaintiffs to prevail at this stage of the case is to present evidence (that we must view in the light most favorable to the plaintiffs) that raises a disputed issue of material fact as to the meaning of the contract. That they have done.

.

**2.** The district court dismissed much of the evidence that the plaintiffs proffered because it was written after the contract provisions at issue were drafted. The court reasoned that because the evidence postdated the drafting process it lacked any nexus to the drafting and could not illuminate the meaning of the

contract provisions. Although such an inference, if justified, could be drawn after trial, it is not permissible at the summary judgment stage. It is entirely possible that the materials that were written after the contract provisions are evidence of what the parties to the contract intended by its provisions.

Of course, because the contracts, considered in the light most favorable to the plaintiffs, reasonably may be read to allow termination only for cause, the district court's rulings that State Farm breached no implied covenants of good faith and fair dealing as to the agents' other claims should be reversed as well.

## II.  The Independent Action

The gravamen of the plaintiff's complaint in the independent action under Rule 60(b) is that State Farm's counsel, Orrick, Herrington & Sutcliffe, committed fraud upon the court by responding to the plaintiffs' request to depose Henry Keller, a former State Farm executive, by fraudulently claiming to represent Keller and opposing the deposition on grounds that he was very elderly, had long been retired, and possessed no documents or knowledge concerning the subject matter of the lawsuit.  In reliance on Orrick's representations, the plaintiffs did not pursue the deposition.  In reality, the plaintiffs claim, Orrick did not represent Keller and knew Keller possessed material evidence that strongly supported their claims and was willing and ready to testify.

The majority holds that Orrick's acts are not actionable because they do not rise to the level of fraud on the court or work a grave miscarriage of justice.  I cannot agree.  The majority's interpretation as to when a federal court may set aside a judgment is too narrow.  Rule 60(b) permits a court, within a reasonable time, not more than one year after a judgment is entered, to grant a motion for relief from a judgment because of, inter alia, fraud on the court.  *See* Fed.R.Civ.P. 60(b).  After a year elapses, the rule also allows a party to bring an independent action to set aside a judgment for fraud on the court.  The power to grant relief in an independent action is based in the court's inherent "power to vacate judgments on proof that a fraud on the court has been committed."

*In re Levander,* 180 F.3d 1114, 1118 (9th Cir.1999) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).  Rule 60(b) largely codified preexisting substantive law regarding the circumstances in which courts are empowered to set aside judgments, but removed many procedural complexities that were associated with preexisting law.  *See Averbach v. Rival Mfg. Co.,* 809 F.2d 1016, 1020–21 (3d Cir.1987) (discussing the relationship of Rule 60(b) to prior law and practice).  The period of a year specified by Rule 60(b) supplanted the earlier requirement that a request to set aside a judgment that was brought as part of the original action must have been made before end of the term of court in which the judgment was entered.  However, nothing in the text of Rule 60(b) requires that a plaintiff make a higher showing for relief in an independent action than in a motion under the rule.

The question presented here is whether the fraud that the plaintiffs have alleged may, if proved, warrant relief.  Fraud in the discovery process plainly may sustain an independent action under Rule 60(b).  The Supreme Court has held that federal courts may set aside judgments, notwithstanding the defense of laches or the plaintiff's lack of diligence in pursuing relief if a judgment has been obtained based on evidence that counsel has "manufactured."  *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944).  The Third Circuit has held that a plaintiff stated a claim for relief in an independent action based on opposing counsel's false and misleading answers to interrogatories.  *See Averbach,* 809 F.2d at 1017, 1022–23.  None of our precedents warrants a different result.  In *Levander,* we stated that "non-disclosure by itself does not constitute fraud on the court" that warrants relief in an independent action under Rule 60(b), *Levander,* 180 F.3d at 1119, and that ordinary perjury similar-

ly is not actionable, but we explicitly embraced a definition of fraud on the court that encompasses "fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Id.* at 1119 (quoting 7 James W. Moore, et al., Moore's Federal Practice ¶ 60.33, at 515 (2d ed.1978)).

Here, Orrick is alleged not merely to have failed to disclose material evidence [3] that under long-established federal law it was obligated to disclose, but also to have claimed to represent a potential witness that it did not represent and intentionally to have misrepresented that person's position in a calculated attempt to obtain a judgment in its client's favor. An attorney in a legal proceeding who fraudulently claims to represent a client whom she or he does not, not only commits a fraud against the parties to the proceeding, but also a fraud on the court. Both the court and the parties are entitled to rely on an attorney's representation that she or he actually represents a client whom he or she claims to represent. A fraudulent misrepresentation about the fact, nature, and scope of an attorney's mandate is not only an ethical breach but a fraud of the highest order that interferes with the machinery of our judicial system. Our adversary system cannot function if attorneys claim to represent individuals that they do not. The majority fails to appreciate the gravity of Orrick's alleged fraud, and errs as a matter of law in holding that an allegation of such fraud may be dismissed for failure to state a claim.

The majority also errs by holding that the plaintiffs could have, with diligence, discovered Orrick's alleged duplicity by insisting on deposing Keller despite Orrick's representations and that the plaintiffs' failure to do so bars their claim. I strongly disagree. First, under *Hazel–Atlas,* the diligence of a party in discovering the alleged basis for setting aside a judgment is not decisive. *See Hazel–Atlas,* 322 U.S. at 246, 64 S.Ct. 997. Moreover, unlike the perjury in *Levander,* Orrick's alleged fraud will not be subject to the rigors of cross-examination in the factfinding process itself: The representation by counsel that he represents a witness and that the witness has no material information is not "testimony" that may be cross-examined. A party is entitled to rely on the representations of adverse counsel regarding such matters.

As a matter of construing the discovery rules, moreover, the principle that the majority embraces, namely that a party may not rely on the plain representations of adverse counsel in the discovery process, is not only cynical but unworkable. It requires a party doggedly to pursue discovery notwithstanding opposing counsel's signed certification that such discovery is not warranted, *see* Fed.R.Civ.P. 26(g), on the possible chance that opposing counsel is committing fraud. The failure of the party seeking discovery to take such action, which itself might violate the discovery rules, by the majority's lights, precludes it from seeking redress if it later discovers that it has been the victim of fraud. I cannot embrace such a view of the law.

Such an interpretation of the discovery rules is not only unconscionable, but flies in the face of the purpose of the rules themselves. As the Rules Advisory Committee has explained, Rule 26 explicitly imposes an affirmative duty "to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37," Fed. R.Civ.P. 26, Advisory Committee Notes, 1983 Amendment, Subdivision (g), and Rule 37(c) permits a district court to sanction a party for making false or misleading

---

**3.** Keller himself advised Orrick that he had material evidence to furnish to the plaintiffs.

discovery disclosures. *See* Fed.R.Civ.P. 37(c). As the Washington Supreme Court has held, the Federal Rules of Civil Procedure explicitly encourage the imposition of sanctions for discovery abuse in part because "a spirit of cooperation and forthrightness during the discovery process is necessary for the proper functioning of modern trials." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wash.2d 299, 858 P.2d 1054, 1077 (1993). The court noted that although "[f]air and reasoned resistance to discovery is not sanctionable[,] ... misleading ... responses [are] ... contrary to the purposes of discovery and ... most damaging to the fairness of the litigation process." *Id.* at 1079–80.

The plaintiffs' allegations, if proved, would be most damaging to the ethical standing and professional reputation of any attorney—and indeed might have severe collateral consequences such as disbarment.[4] The majority minimizes the gravity of the plaintiffs' charge and invites similar behavior in the future by holding that such a claim may be dismissed for failure to state a claim in an independent action under Rule 60(b). As Judge Schwarzer has persuasively explained: "Misconduct, once tolerated will breed more misconduct and those who might seek relief against abuse will instead resort to it in self-defense." William W Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look, 104 F.R.D. 181, 205. I would reverse the district court and reinstate the action.

---

4. The majority does not hold that Orrick and State Farm have not committed the actions as alleged, but merely that the plaintiffs may not seek relief under Rule 60(b). Orrick itself could be well-served by trial of the charges. They must be very disturbing to a reputable firm. If untrue, Orrick should welcome the opportunity to disprove them.